NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

HOWARD JOHNSON INTERNATIONAL, INC.,

               Plaintiff,

v.

MANOMAY, LLC, et al.,

               Defendants.

Civil Action No: 16-7621-SDW-LDW

**OPINION**

July 16, 2019

**WIGENTON**, District Judge.

Before this Court is Plaintiff Howard Johnson International, Inc.'s ("Plaintiff" or "Howard Johnson") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Plaintiff's motion is **GRANTED**.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a Delaware corporation with a principal place of business in New Jersey. (D.E. 1 ¶ 1, Ex. A. at 21.)[1] Defendant Manomay, LLC ("Manomay") is a limited liability company organized under the laws of and maintaining a principal place of business in Florida. (*Id.* ¶ 2.)

---

[1] Citations to "D.E. 1" refer to the Verified Complaint filed in this matter and the documents attached thereto. Citations to "D.E. 45-3" refer to Plaintiff's Statement of Undisputed Material Facts and the citations contained therein. Citations to "D.E. 54-3" refer to Defendants' Response to Plaintiff's Statement of Undisputed Material Facts and the citations contained therein.

Defendants Pranit Patel, Dipak Patel, Nita Patel, and Jagruti Patel (collectively, the "Patels") are the constituent members of Manomay. (*Id.* ¶¶ 3-7; Ex. A Schedule B.)[2]

On or about June 30, 2011, Plaintiff entered into a franchise agreement (the "Agreement") with Manomay permitting Manomay to operate a 262-room Howard Johnson® guest lodging facility in Altamonte Springs, Florida (the "Facility") for a period of fifteen years. (D.E. 45-3 ¶¶ 14-16; 54-3 ¶¶ 14-16; 1 Ex. A.) Under the terms of the Agreement, Manomay was required to make certain periodic payments to Plaintiff ("Recurring Fees"). (D.E. 45-3 ¶¶ 17-28; 54-3 ¶¶ 17-28; 1 Ex. A §§ 7, 18.1 and Schedule C.) Section 18.4 of the Agreement granted either party the right to terminate, provided that the party seeking to terminate had "paid all fees and charges due under th[e] Agreement . . . as of the date [of] notice of termination and as of the effective date of the termination." (D.E. 1 Ex. A § 18.4.) In addition, in the event Manomay failed to comply with its obligations and responsibilities under the Agreement, Plaintiff was allowed to terminate the Agreement and to seek liquidated damages and attorneys' fees and costs incurred in attempting to enforce the Agreement's terms. (D.E. 45-3 ¶¶ 31-36; 54-3 ¶¶ 31-36; 1 Ex. A §§ 11.2, 12.1, 18.3.) On the same day the Agreement was signed, the Patels executed a guaranty ("Guaranty") of Manomay's obligations under the Agreement. (D.E. 45-3 ¶¶ 41-44; 54-3 ¶¶ 41-44; 1 Ex. B.)

On December 10, 2014, Manomay sent Plaintiff a letter purporting to be a "Notice of Termination," pursuant to Section 18.4 of the Agreement (the "December 10th Letter"). (D.E. 54-2 Ex. D.) At the time that letter was sent, Manomay was in arrears on Recurring Fees owed under the Agreement. (D.E. 54-3 ¶ 18.) On January 16, 2015, Plaintiff advised Manomay in writing that it was in breach of the Agreement for failure to pay those fees, granted the company time to cure

---

[2] Pranit Patel is a citizen of Florida and the other Patel defendants are citizens of New Jersey. (D.E. 1 ¶¶ 3-6.)

the default, and stated that failure to do so could lead to termination of the Agreement. (D.E. 54-2 Ex. E.)

Defendants continued to fail to meet their financial obligations under the Agreement. (D.E. 45-3 ¶¶ 45-47; 54-3 ¶¶ 45-57.) On August 28, 2015, November 4, 2015, February 10, 2016, April 21, 2016, and May 18, 2016, Plaintiff again advised Defendants in writing that they were in breach of the Agreement for failing to pay Recurring Fees, granted them time to cure their default, and stated that failure to do so could lead to termination of the Agreement. (D.E 45-3 ¶¶ 46-50; 54-3 ¶¶ 46-50.) Defendants did not remit the required payments, and on July 25, 2016, Plaintiff sent Manomay a final written notice, indicating it was terminating the Agreement and demanding that Manomay perform its "post-termination obligations such as the removal of all items that display or refer to the Howard Johnson brand at the Facility," and pay Recurring Fees owed through the date of termination and liquidated damages. (D.E. 45-3 ¶ 51; 54-3 ¶ 51.) Manomay did not remove the exterior signage bearing Plaintiff's registered trademarks, nor did Defendants make the demanded payments. (D.E. 45-3 ¶¶ 54-57; 54-3 ¶¶ 54-57.)

In an eight-count Complaint filed in this Court on October 20, 2016, Plaintiff asserted claims against Defendants for breach of the Agreement and the Guaranty as well as a Lanham Act claim for unauthorized use of Howard Johnson® marks, and sought an award of Recurring Fees, liquidated damages, interest, attorneys' fees, and costs. (D.E. 1 at 10-19.)[3] On February 8, 2019, Plaintiff filed the instant motion for summary judgment. (D.E. 45.) Briefing was completed as of May 28, 2019. (D.E. 54, 59.)

---

[3] Plaintiff also seeks an accounting (Count Two) and a declaratory judgment that Plaintiff may "enter the property at the Facility and remove any and all exterior signage, exterior items and other exterior materials displaying the Howard Johnson marks" (Count Eight). (D.E. 1.)

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## III. DISCUSSION

### A. Termination of the Agreement

Section 18.4 of the Agreement provides that either party may terminate "by giving prior written notice to the other, provided, that if you decide to exercise your right to terminate this Agreement, you must have paid all fees and charges due under this Agreement . . . as of the date you provide notice of termination and as of the effective date of the termination." (D.E. 1 Ex. A.) Under New Jersey law, "when the 'terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written.'" *Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.*, Civ. No. 03-799, 2005 WL 2656676, at *4 (D.N.J. Oct. 18, 2005) (citing *City of Orange Twp. v. Empire Mortg. Servs., Inc.*, 775 A.2d 174, 179 (N.J.

Super. Ct. App. Div. 2001)). Whether a contract is unambiguous is a question of law for the court and properly considered at summary judgment. *Id.*; *see also Aerospace & Agric. Implement Corkers v. Mack Trucks, Inc.*, 917 F.2d 107, 111 (3d Cir. 1990); *J.I. Hass Co., Inc. v. Gilbane Bldg. Co.*, 881 F.2d 89 (3d Cir. 1989). Having reviewed the Agreement, this Court finds Section 18.4 to be clear and unambiguous. The plain language of the provision is not subject to multiple interpretations and is straightforward in its requirements.

Defendants contend the December 10th Letter notified Plaintiff of Manomay's intent to terminate the contract effective June 28, 2015. (D.E. 54 at 1, 5-7.) However, as of that date, Defendants admit that Manomay was not current on its payment obligations under the Agreement. (D.E. 54-3 at 13 ¶ 18.) Under the unambiguous terms of Section 18.4, the December 10th Letter could not terminate the agreement because Manomay had not "paid all fees and charges due." Therefore, the contractual relationship between the parties remained in full effect until July 25, 2016, when Plaintiff's letter to Manomay terminated it in accordance with Sections 11.2. (D.E. 59 at 5-7.) Having determined that the Agreement was binding on the parties until that date, this Court may now turn to the question of Manomay's breach.

### B. Breach of the Agreement

This Court is satisfied that the Agreement's terms governing Manomay's financial obligations are also clear and unambiguous. Specifically, Sections 7, 18.1, and Schedule C clearly and precisely set out how Recurring Fees are calculated, what they entail, when Manomay is responsible to pay them, and what interest rates are applicable. (D.E. 1 Ex. A.) These provisions were known to Manomay at the time the Agreement was executed. Defendants admit Manomay failed to make the requisite payments. (D.E. 54-3 at 13 ¶ 18.) Therefore, Manomay was in breach of the Agreement and liable for damages pursuant to its terms. There being no triable issues as to

Manomay's breach, Plaintiff's motion for summary judgment on Counts Three, Five, and Six is granted.

C. Remedies for Breach

As to the remedies for Defendants' breach of the Agreement, Plaintiff seeks summary judgment on the issues of Recurring Fees, liquidated damages, attorneys' fees and costs, and interest where applicable. This Court takes each category in turn.

1. Liquidated Damages

Plaintiff seeks $89,691.60 in liquidated damages and $40,780.06 in interest. (D.E. 45-5 at 13-15.) "Under New Jersey law, liquidated damages clauses may only be enforced if they reasonably forecast the harm resulting from breach." *Knights Franchise Sys., Inc. v. First Value RC, LLC*, Civ. No. 13-4976, 2017 WL 1170849, at *3 (D.N.J. Mar. 29, 2017) (citing *Wasserman's Inc. v. Twp. of Middletown*, 645 A.2d 100, 106 (N.J. 1994)). "Whether a liquidated damages clause is enforceable is a question of law for the court to decide." *Ramada Worldwide Inc. v. Columbia SC Hosp., LLC*, Civ. No. 17-13020, 2018 WL 3105421, at *5 (D.N.J. June 25, 2018) (citing *Naporano Assocs., L.P. v. B&P Builders*, 706 A.2d 1123, 1127 (N.J. Super. Ct. App. Div. 1998)). "[W]hen a liquidated damages clause for a commercial transaction is negotiated by parties with comparable bargaining power, the ultimate issue is whether the amount of liquidated damages is reasonable, either at the time of contract formation or the breach." *Ramada*, 2018 WL 3105421, at *5. Prejudgment interest on liquidated damages claims is permitted in breach of contract claims, and "will be awarded from the time it accrues until the time judgment is entered." *Ramada*, 2018 WL 3105421 at *5 n.2.

Sections 12.1 and 18.3 set out a formula for liquidated damages and defines them as a "reasonable pre-estimate of the damages that will be incurred" from a termination of the

Agreement prior to the end of the full fifteen-year term. (D.E. 1 Ex. A at 16-17, 24, 30.) Here, the applicable formula is "the lesser of (i) 1,000 for each guest room of the Facility [Manomay was] authorized to operate at the time of Termination or (ii) the total amount of Recurring Fees generated at the Facility during the twelve full calendar months of operation immediately preceding the month in which the Termination occurs." (*Id.* § 18.3.) This Court is satisfied that the $89,691.60 in liquidated damages reasonably forecasts the harm that Plaintiff would suffer as a result of a breach of the Agreement, and is not disproportionate to the loss Plaintiff would likely suffer as a result of early termination.[4] *See Travelodge Hotels, Inc.*, 2005 WL 2656676 at *10; D.E. 1 Ex. A §§ 12, 18. Plaintiff is also entitled to $40,780.06 in interest (the agreed upon prejudgment interest at a rate of 1.5% on those liquidated damages from August 24, 2016 (30 days from the date of termination) through March 4, 2019 (the initial return date of this motion) pursuant to Section 7.3. (D.E. 1 Ex. A § 7.3.)[5]

    2. Recurring Fees

Plaintiff seeks $404,938.61 in Recurring Fees, inclusive of interest as of February 6, 2019, and have provided an invoice detailing the outstanding amounts owed between October 2014

---

[4] Defendants' argument that liquidated damages are unreasonable because the Agreement was not the product of arms-length negotiation between two parties with equal bargaining power is unpersuasive. (D.E. 54 at 8-10.) Defendants were not without experience or knowledge of the hotel business. "Prior to executing the [Agreement], Manomay operated the hotel in Altamonte Springs, Florida as a Magnuson Grand Hotel." (D.E. 54-3 at 11 ¶ 4.) Defendants entered into the Agreement in order to "increase occupancy and revenue." (*Id.*) Dipak Patel "had prior experience" with "hotel ownership and franchising." (*Id.* at 10 ¶ 1.) In addition, the Agreement itself indicates that Section 18, which sets out "Special Stipulations" including the calculation of liquidated damages, were made at Manomay's "request or in response to other changes to [Plaintiff's] form agreement" and "are the product of arms' length negotiations with [Plaintiff] and represent mutually agreed, material inducements to enter into this Agreement, beneficial to [Manomay] and supported by adequate consideration from both parties." (D.E. 1 Ex. A § 18.)

[5] Count Four of the Complaint is a claim for actual damages, sought only if liquidated damages were denied. Therefore, Count Four will be dismissed as moot. The award of liquidated damages also eliminates the need for a determination of actual damages; therefore, Count Two, which seeks an accounting, will also be dismissed as moot.

through March 2017.  (D.E. 45-3 ¶ 59; 45-5 ¶¶ 58-59, Ex. I.).  Section 7 of the Agreement defines Recurring Fees as consisting of: 1) royalties "equal to four percent (4.0%) of Gross Room Revenues of the Facility accruing during the calendar month . . . until the end of the Term"; 2) a marketing contribution and room sales charge accruing "until the end of the Term"; 3) taxes "equal to any federal, state or local sales, gross receipts, use, value added, excise or similar taxes assessed . . . on the Recurring Fees . . . when due"; 4) interest; 5) and a relicense fee when applicable.  (D.E. 1 Ex. A § 1.)   Although Defendants admit to owing Recurring Fees under the Agreement, (D.E. 54 at 10), they contend that any fees accruing between "August 2016 and March 2017, including $6,657.34 in 'De-Identification [charges]'"[6] may not be collected because they accrued after the termination of the Agreement and, as such, are not Recurring Fees.  (D.E. 54 at 11.)  This Court agrees. Therefore, Plaintiff is entitled to $396,966.93 in Recurring Fees, calculated as the total amount contained in Plaintiff's invoice (D.E. 45-5 Ex. I), less $7,971.68 in charges incurred after the end of the contractual term.

### 3.  Attorneys' Fees and Costs

The Agreement also provides for the payment of attorneys' fees and costs to a prevailing party in an action to recover monies owed under the Agreement.  (D.E. 1 Ex. A § 17.4 (stating that in an action to "enforce" or "collect amounts owed" under the Agreement, "[t]he non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party").)  Plaintiff has submitted an invoice of the attorneys' fees and costs incurred in pursuing this action and Defendants have not challenged those amounts.  (D.E. 45-3 ¶ 70; 54-3 at

---

[6] The "de-identification" charge is the cost of hiring a vendor to remove signage at the Facility that remained in place after the termination of the Agreement.  (D.E. 59 at 10-11.)  Not only was this charge incurred after the end of the contractual term, but it is not of the type included in the definition of Recurring Fees.

10 ¶ 70.)  Therefore, Plaintiff's motion for summary judgment as to attorneys' fees and costs in the amount of $10,681.29 will be granted.

D.  Breach of the Guaranty

To be entitled to a judgment on a guaranty, a plaintiff must demonstrate:

1) execution of the guarantee by the guarantor (i.e., that it was the defendant who signed the guarantee);
2) the principal obligation and terms of the guaranty;
3) the lender's reliance on the guaranty in extending monies to the borrower;
4) default by the principal obligator;
5) written demand for payment on the guarantee;
6) failure of the guarantor to pay upon written demand.

*U.S. on Behalf of Small Bus. Admin. v. DelGuercio*, 818 F. Supp. 725, 727–28 (D.N.J. 1993) (citing 38 C.J.S. Guaranty §§ 8-14 and 38 Am. Jur. 2d § 119.)  Here, Defendants concede that the Guaranty was "executed simultaneously with" the Agreement, and that the Patels each signed the Guaranty.  (D.E. 54 at 12-13; 54-3 at 12 ¶ 11; 45-3 ¶ 44.)  The terms of the Guaranty are unambiguous and require that "[u]pon default by [Manomay] and notice from [Plaintiff]," the Patels "will immediately make each payment and perform or cause [Manomay] to perform, each unpaid or unperformed obligation of [Manomay] under the Agreement."  (D.E. 1 Ex. B; 45-3 ¶ 42.)  The express terms of the Guaranty indicate that its execution induced Plaintiff to enter into the Agreement.  (*Id.*)  The record is also clear that Manomay defaulted on its obligations under the Agreement and that Plaintiff provided Defendants with written notice of default and demand for payment on the Guaranty.  (D.E. 45-3 ¶¶ 45-51; 54-3 ¶¶ 45-51.)  Finally, the Patels admit that they have not made payment as required by the Guaranty.  (D.E. 45-3 ¶ 57; 54-3 ¶ 57; 54-3 at 15 ¶ 27.)  As a result, there is no genuine issue of material fact as to the breach of the Guaranty and summary judgment will be granted as to Count Seven of the Complaint.

E.  Lanham Act Claim

Section 32 of the Lanham Act provides that any person who, without the consent of the registrant:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1)(a).  To successfully bring a Lanham Act trademark infringement claim under Section 32, Plaintiff must show that: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *Howard Johnson Int'l, Inc. v. SSR, Inc.*, Civ. No. 14-4611, 2017 WL 1246348, at *5 (D.N.J. Apr. 3, 2017); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).  If successful, an injured plaintiff may recover "any damages sustained by the plaintiff," to be "assessed by the Court or under the Court's discretion."  15 U.S.C. § 1117(a). Those damages may include: "(1) defendant's profits; (2) any damages sustained; and (3) costs of the action." *Howard Johnson Int'l, Inc.*, 2017 WL 1246348 at *5–6; *see also* 15 U.S.C. § 1117(a).

Here, there is no dispute that Plaintiff owns and registered the trademarks at issue. (D.E. 45-3 ¶¶ 4-10; 54-3 ¶¶ 4-10.)  Nor is there any dispute that signage containing the marks remained at the Facility after Plaintiff terminated the Agreement.  (D.E. 45-3 ¶¶ 16, 56; D.E. 54-3 ¶¶ 16, 56.)  The continued use of the registered trademarks at the Facility after termination likely caused confusion or mistake, in violation of Section 32, such that persons coming to the Facility would likely and reasonably believe that they were staying at a Howard Johnson facility. *See e.g.*, *S&R*

*Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992); *Howard Johnson Int'l, Inc.*, 2017 WL 1246348 at *5–6. Summary judgment on liability, therefore, is appropriate as to Count One.

Plaintiff seeks $44,845.80 in infringement damages. (D.E. 45-3 ¶ 68; 54-3 ¶ 68.) Plaintiff reached this amount by multiplying Manomay's average monthly Recurring Fees for the twelve months prior to termination ($7,474.30) by the number of months that Defendants were confirmed to be infringing (6). (D.E. 45-3 ¶ 69.) This Court concludes that this is a reasonable measurement of the damages Plaintiff sustained from Defendants' misuse of Plaintiff's trademarks. *See, e.g.*, *Travelodge Hotels, Inc. v. Seaside Hosp., LLC*, No. 15–5595, 2016 WL 5899281, at *5 (D.N.J. Oct. 6, 2016); *Howard Johnson Int'l, Inc.*, 2017 WL 1246348 at *5–6.

Plaintiff also seeks to treble its damages, alleging that Defendants' infringement of the trademarks was deliberate and willful. (D.E. 45-3 ¶ 69; 45-5 at 15; 45-4 at 25-26.) Section 1117(b) of the Lanham Act provides that

> [T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, ... together with a reasonable attorney's fee, if the violation consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark, ... in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C. § 1117(b). Treble damages, however, are only appropriate "if the defendant's infringement was intentional, knowing, or willfully blind." *Travelodge Hotels, Inc.*, 2016 WL 5899281, at *6 (citing *Microsoft Corp. v. CMOS Techs.*, 872 F. Supp. 1329, 1339–41 (D.N.J. 1994)). Although Plaintiff alleges that Defendants' actions were deliberate and willful, the record does not support such a finding. Although Plaintiff's July 25, 2016 termination letter demanded that Defendants remove "all items that display or refer to the Howard Johnson brand at the Facility," the letter also articulated Plaintiff's "rights under the Agreement" to "send an independent contractor to the Facility to remove all such signage at and around the Facility." (D.E.

45-5 Ex. H.)  For reasons that are not explained, Plaintiff did not exercise that right until nearly seven months after it terminated the Agreement (D.E. 45-3 ¶¶ 54-56),[7] despite evidence in the record that Plaintiff had communicated to Defendants that it would pick up the signage and, indeed, that Defendants had repeatedly asked it to do so.  (D.E. 54-1 ¶¶ 21-22.)  Therefore, this Court cannot conclude that Defendants' actions were intentional or willful and will not award treble damages.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:  Leda D. Wettre, U.S.M.J.
Parties

---

[7] Because Plaintiff has already removed the signage, Count Eight of the Complaint will be dismissed as moot.